# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA

| UNVERFERTH MFG. CO., INC. | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | CAUSE NO.: 3:13-CV-97-TLS |
| PAR-KAN CO. | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On February 12, 2013, the Plaintiff, Unverferth Manufacturing Company, Inc. ("Unverferth"), filed this action against the Defendant, Par-Kan Co. ("Par-Kan"), alleging infringement of United States Patent No. 8,211,047 (the "'047 patent"). Par-Kan filed an Amended Counterclaim [ECF No. 31] and an Amended Answer and Defenses to Complaint [ECF No. 32] on May 28, 2013. This matter is before the Court on Unferverth's Motion to Dismiss Par-Kan's Amended Inequitable Conduct Counterclaim and to Strike Par-Kan's Amended Inequitable Conduct Affirmative Defense [ECF No. 35] filed on June 14, 2013. Unferverth filed its Memorandum in Support [ECF No. 36] on the same day, Par-Kan filed its Response [ECF No. 39] on July 3, 2013, and Unferverth filed a Reply [ECF No. 41] on July 15, 2013. For the following reasons, the Court grants Unferverth's Motion to Dismiss and strikes Par-Kan's affirmative defense of inequitable conduct.

## BACKGROUND

On February 15, 2008, Unverferth filed a patent application for a seed carrier with a pivoting conveyor, which eventually became the '047 patent. To overcome rejections by the United States Patent and Trademark Office ("the PTO"), Unverferth, through its Vice President of Sales and Marketing, submitted two declarations ("the Fanger Declaration" and "the

Supplemental Fanger Declaration") under 37 C.F.R. §1.132. The two declarations attributed commercial success of Unverferth's seed runners solely to the patented features. The declarations, however, did not mention that the seeding industry allegedly underwent a transformative change in the meantime, which expanded the demand for seed tender products. Par-Kan alleges that "[w]hen Unverferth submitted the Supplemental Fanger Declaration, the declarant (Fanger) and the [*sic*] Unverferth knew the seed industry had earlier undergone a transformative change in the manner by which seed was sold and delivered to farmers for planting," and that this change, rather than the claimed features, created and/or greatly expanded the market for seed tender products like Unverferth's. (Am. Countercl. ¶ 24, ECF No. 31; Am. Answer. ¶ 22, ECF No. 32.) More specifically, the declarations included statements such as "I am unaware of any other factors contributing to the success of the product," and "[i]n my opinion, Unverferth's increased sales are not due to an increase in the market size." (Def.'s Resp. 6, ECF No. 39.) Following the submission of the Supplemental Fanger Declaration, the PTO issued a final Office Action on September 30, 2011, stating that "[t]he supplemental declaration filed under 37 CFR 1.132 filed 07/05/2011 is insufficient to overcome the rejection of claims 1-5 and 9-11 based upon a rejection under 35 U.S.C §103 as set forth in the last Office Action." (Pl. Mem. Supp. Mot. Dismiss. Ex. 1, at UM-Pkan0000206-212.) The PTO also noted that Mr. Fanger's declarations were based in opinion, not fact. (*Id.*) The '047 patent only issued later after claims 1-5 and 9-11 were cancelled and new claims were submitted. (*See id*. at UM-Pkan0000220-221.) The patent issued on the new claims unrelated to the affidavits at issue here and without any relation to commercial success arguments. (*Id.*)

Par-Kan asserted inequitable conduct as a counterclaim and as an affirmative defense to the Complaint. Both filings claimed that Unverferth made false representations in the two Fanger

Declarations. Unverferth then moved the Court to strike Par-Kan's inequitable conduct defense and dismiss the inequitable conduct counterclaim pursuant to Federal Rules of Civil Procedure 12(f) and 12(b)(6) for failure to state a claim upon which relief can be granted.

**DISCUSSION**

**A.     Standard of Review**

*1.     Motion to Dismiss under Rule 12(b)(6)*

The purpose of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim is to test the sufficiency of the pleading, not to decide the merits of the case. *See Gibson v. City of Chi.*, 910 F.2d 1510, 1520 (7th Cir. 1990). Federal Rule of Civil Procedure Rule 8(a)(2) provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." However, "recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 661, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))[1]. As the Supreme Court has stated, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id*. Rather, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*. (quoting *Twombly*, 550 U.S. at 570). A complaint is facially plausible if a court can reasonably infer from factual content in the pleading that the defendant is liable for the alleged wrongdoing. *Id*. (citing *Twombly*, 550 U.S. at 570). The Seventh Circuit has synthesized the standard into three requirements. *See Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). "First, a plaintiff must

---

[1] In *Twombly* the Supreme Court "retooled federal pleading standards, retiring the oft-quoted [*Conley v. Gibson*, 355 U.S. 42, 47 (1957)] formulation that a pleading 'should not be dismissed for failure to state a claim unless it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim which would entitle him to relief.'" *Killingsworth v HSBC Bank Nevada, N.A.*, 507 F.3d 614, 618, (7th Cir. 2007).

3

provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.*

2. *Motion to Strike under Rule 12(f)*

Rule 12(f) provides that the Court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter. Fed.R.Civ.P. 12(f). The court "has considerable discretion in striking" such matters. *Delta Consulting Grp., Inc. v. R. Randle Constr., Inc.*, 554 F.3d 1133, 1141 (7th Cir.2009). Usually, motions to strike are disfavored, but such motions may be granted if they remove unnecessary clutter and expedite the case. *Heller Financial, Inc. v. Midwhey Powder Co.*, 883 F.2d 1286, 1294 (7th Cir. 1989). While Rules 12(b)(6) and 12(f) relate to different challenges, they both test the legal sufficiency of a party's pleadings. Therefore, they are both subject to the pleading requirements of the Federal Rules of Civil Procedure. *Id*. As a result, the Court considers both the Plaintiff's motion to dismiss the inequitable conduct counterclaim and its motion to strike Par-Kan's inequitable conduct defense under the same pleading standard.

3. *Inequitable Conduct and Heightened Pleading Standard under Rule 9(b)*

To successfully plead claims of fraud, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake." This heightened standard applies to claims of inequitable conduct. *Ferguson Beauregard/Logic Controls, Div. of Dover Res., Inc.*

4

*v. Mega Syst., LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003). Because inequitable conduct renders an entire patent (or even a patent family) unenforceable, as a general rule, this doctrine should only be applied in instances where the patentee's misconduct resulted in the unfair benefit of receiving an unwarranted claim. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1292 (Fed. Cir. 2011). After all, the patentee obtains no advantage from misconduct if the patent would have issued anyway. *Id*. Moreover, enforcement of an otherwise valid patent does not injure the public merely because misconduct, lurking somewhere in patent prosecution, was immaterial to the patent's issuance. *Id*.

Due to the severe penalty of inequitable conduct, the accused infringer must prove by clear and convincing evidence that the patent applicant (1) made an affirmative misrepresentation of material fact, failed to disclose material information, or submitted false material information, and (2) intended to deceive the PTO. *Star Scientific, Inc. v. R.J. Reynolds Tobacco Co.*, 537 F.3d 1357, 1365 (Fed. Cir. 2008).

The materiality prong of the inequitable conduct test requires a showing of "but-for" materiality. Hence, in assessing the materiality of the alleged withholding of information, the Court must determine whether the PTO would have allowed the claim if it had been aware of the undisclosed information. *Therasense*, 649 F.3d at 1291. To satisfy this requirement, a pleading must provide "who, what, when, where, and how the material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1328 (Fed. Cir. 2009). Specifically, a pleading must name the specific individual associated with the filing or prosecution of the patent, who both knew of the material information and deliberately withheld or misrepresented it. *See id.* at 1329. Second, the accused infringer must identify which claims, and which limitations in those claims, the withheld references are relevant to, and where

in those references the material information is found—i.e., the "what" and "where" of the material omissions. *Id*. Third, the pleading should identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record. Such allegations are necessary to explain both "why" the withheld information is material and not cumulative, and "how" an examiner would have used this information in assessing the patentability of the claims. *Id*. at 1329–30.

Deceptive intent is a separate component of the inequitable conduct standard and is not assumed from materiality. The accused infringer must prove that the other party had a specific intent to mislead or deceive the PTO. In a case involving nondisclosure of information, the accused infringer must show that the applicant made a deliberate decision to withhold a known material reference. The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive. *Therasense*, 649 F.3d at 1290–91. Furthermore, mere allegation of improper performance of, or omission of, an act one ought to have performed does not satisfy this intent requirement. *Star Scientific*, 537 F.3d at 1366. Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. Deceptive intent, however, must be the single most reasonable inference drawn from the evidence. *Therasense*, 649 F.3d at 1291.

The *Therasense* court did identify an egregious affirmative misconduct exception to the "but-for" materiality requirement. *Id.* at 1292–93. The exception is based on a line of Supreme Court cases dealing with "unclean hands." *Id.* This exception, though, applies only in a very narrow set of circumstances. In particular, this exception was designed to address extraordinary circumstances and "deliberately planned and carefully executed scheme[s]." *Id.* at 1292 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944)). Furthermore, the

in those references the material information is found—i.e., the "what" and "where" of the material omissions. *Id*. Third, the pleading should identify the particular claim limitations, or combination of claim limitations, that are supposedly absent from the information of record. Such allegations are necessary to explain both "why" the withheld information is material and not cumulative, and "how" an examiner would have used this information in assessing the patentability of the claims. *Id*. at 1329–30.

Deceptive intent is a separate component of the inequitable conduct standard and is not assumed from materiality. The accused infringer must prove that the other party had a specific intent to mislead or deceive the PTO. In a case involving nondisclosure of information, the accused infringer must show that the applicant made a deliberate decision to withhold a known material reference. The absence of a good faith explanation for withholding a material reference does not, by itself, prove intent to deceive. *Therasense*, 649 F.3d at 1290–91. Furthermore, mere allegation of improper performance of, or omission of, an act one ought to have performed does not satisfy this intent requirement. *Star Scientific*, 537 F.3d at 1366. Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence. Deceptive intent, however, must be the single most reasonable inference drawn from the evidence. *Therasense*, 649 F.3d at 1291.

The *Therasense* court did identify an egregious affirmative misconduct exception to the "but-for" materiality requirement. *Id.* at 1292–93. The exception is based on a line of Supreme Court cases dealing with "unclean hands." *Id.* This exception, though, applies only in a very narrow set of circumstances. In particular, this exception was designed to address extraordinary circumstances and "deliberately planned and carefully executed scheme[s]." *Id.* at 1292 (quoting *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 245 (1944)). Furthermore, the

creation of the exception was done in the context of tightening the inequitable conduct standard, not broadening it. *Id.* at 1290. In noting the extraordinary conduct that might fall under the exception, the court specifically made a point of explaining that neither the nondisclosure of prior art references nor the failure to mention such references in an affidavit constituted egregious affirmative misconduct. *Id.* at 1292–93.

**B.     Analysis**

*1.     Materiality*

As mentioned above, Rule 9(b) and *Exergen* require a pleading to identify "who, what, when, where and how" the inequitable conduct was committed. Par-Kan's Amended Answer and Amended Counterclaim have properly pleaded the "who" and "when" prongs, but fail to meet the "what, where, how, and why" requirements.

Par-Kan's pleadings contain a conclusory statement that the undisclosed information was material. (Am. Answer. ¶¶24 – 25; Am. Countercl. ¶¶26–27.) Par-Kan failed to identify the specific claims or limitations to which the Supplemental Fanger Declaration was relevant. In addition, even though Par-Kan alleged that the Supplemental Fanger Declaration attempted to deceive the PTO into believing that the claimed features were the only factor leading to Unverferth's increased sales (Am. Answer. ¶23; Am. Countercl. ¶25), Par-Kan did not state how an examiner would have used this piece of information in assessing patentability and why this information was material in granting the patent. Even more importantly, the PTO explicitly stated that the Supplemental Fanger Declaration was insufficient to overcome the rejections. (Pl. Mem. Supp. Mot. Dismiss, Ex. 1, at UM-Pkan0000206) ("The supplemental declaration filed under 37 CFR 1.132 filed 07/05/2011 is insufficient to overcome the rejection of claim 1-5 and

7

9-11 based upon a rejection under 35 USC 103 as set forth in the last Office action because: As noted in the previous office action, in order to provide a sufficient showing of secondary considerations based upon commercial success, a nexus is required between the success of the commercial embodiment and the claimed invention.") In addition, the claims pending at the time of the Supplemental Fanger Declaration were all subsequently cancelled by Unverferth for an alternative set of claims. *Id*. at UM-Pkan0000220. Finally, the PTO's notice allowance stated that the reason for allowance was a set of arguments that did not contain any reference to the Supplemental Fanger Declaration. (Pl. Mem. Supp. Mot. Dismiss. 17–18.) Therefore, Par-Kan has failed to demonstrate "but-for" materiality.

Par-Kan does attempt to argue, for the first time in its Response, that it does not actually need to show "but-for" materiality because an egregious affirmative misconduct exception applies. Notably, Par-Kan only alleged "but-for" materiality in its Amended Counterclaim without any mention of the exception. *See* Def.'s Am. Countercl. ¶25 ("But for the false representations contained in the Supplemental Fanger Declaration that Unverferth submitted to the PTO, and Unverferth's conscious decision to withhold the Undisclosed Information from the PTO, the PTO would not have issued the '047 Patent."). Even if the Court looks past this problem, the allegations still fail to satisfy the heightened requirements of Rule 9(b) because the allegations do not state with sufficient particularity the necessary information to demonstrate that the exception applies. Furthermore, the exception was designed to target extraordinary conduct, not mere omissions in opinion affidavits. In *Therasense*, the Federal Circuit explained that this exception is targeted at extraordinary circumstances like "deliberately planned and executed schemes" and also stated that things like a "failure to mention prior art references in an affidavit" do not fall under the purview of the exception. *Therasense*, 649 F.3d at 1292–93. The

8

circumstances alleged in this case are far more similar to a failure to mention a prior art reference in an affidavit than they are to a carefully planned and executed scheme to deceive the PTO in the form of an opinion affidavit. Thus, the exception does not apply in this case.

2.  *Specific Intent*

Even if Par-Kan successfully proved "but-for" materiality, it still must prove specific intent to deceive. To satisfy the inequitable conduct standard, deceptive intent must be the most reasonable inference drawn from the evidence. *Therasense*, 649 F.3d at 1291. Deceptive intent may not be assumed from materiality and the accusing party has the burden of proof. A mere allegation of an omission does not satisfy the intent requirement.

Par-Kan's pleadings focus on Unverferth's alleged omission in the Fanger Declaration and Supplemental Fanger Declaration of a significant market change. But Par-Kan's pleadings offer mere conclusory arguments that Unverferth (and Fanger) knew the information was material. Par-Kan, however, did not plead with specific circumstances that Unverferth came to know the reference's importance and deliberately decided to withhold it from the PTO. Even if the market size had increased in recent years and Unverferth knew this was the case, Par-Kan still failed to demonstrate that deceptive intent was the only reasonable inference that can be drawn from the evidence. The affidavit was what amounts to an opinion affidavit. Specifically, Par-Kan cites Fanger as saying "In my opinion, Unverferth's increased sales are not due to an increase in the market size." (Def.'s Resp. at 6.) Par-Kan also quotes him as saying he is "unaware of any other factors contributing to the success of the product." (*Id.*) Par-Kan does not offer anything showing that the only possible inference is that Unverferth and Fanger had a specific intent to deceive. One reasonable inference available is that he believed his statements to

be true. There are a variety of other possible inferences that could be drawn from the evidence as well. Simply put, Par-Kan has failed to meet the burden required by the deceptive intent prong of the inequitable conduct standard.

C.     **Future Leave to Amend**

Under Rule 15(a)(1), a party may amend its pleading once as a matter of course "within (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e) or (f), whichever is earlier." In all other cases, the party must obtain the opposing party's written consent or seek leave of the Court. Fed. R. Civ. P. 15(a)(2).

Unverferth urges the Court to foreclose Par-Kan from future leave to amend its pleadings. Such a ruling, though, would be premature. Par-Kan has already amended its answer and counterclaim. For any further amendments, Par-Kan must either obtain Unverferth's consent or file a motion with the Court for leave to amend. As of now, the Court has not received a motion for another amendment. If Par-Kan files such a motion in the future, the Court will conduct a Rule 15 analysis at that time.

**CONCLUSION**

For the above mentioned reasons, the Court GRANTS the Plaintiff's motion to dismiss Defendant's inequitable conduct counterclaim and to strike Defendant's inequitable conduct affirmative defense [ECF No. 35].

SO ORDERED on May 27, 2014.

                                                         s/ Theresa L. Springmann
                                                        THERESA L. SPRINGMANN
                                                        UNITED STATES DISTRICT COURT
                                                        FORT WAYNE DIVISION